UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 70-1069 - CIV - MORENO

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

BOARD OF EDUCATION OF HENDRY
COUNTY,

    Defendant.
_____/

## ORDER

This Cause is before the Court upon the Joint Motion for Declaration of Partial Unitary Status and for Approval of Stipulation regarding Faculty and Staff Recruiting and Student Discipline (the "Joint Motion") submitted by the United States and the Board of Education of Hendry County, also known as the School Board of Hendry County (the "District") (collectively, the "Parties"). For the reasons given below, this Order grants the Joint Motion and approves the Parties' Stipulation regarding Faculty and Staff Recruiting and Student Discipline (the "Stipulation").

### I.    Procedural History and Stipulated Facts

The United States initiated this lawsuit against the District on July 8, 1970, alleging that the District continued to operate a dual school system based on race. On July 31, 1970, the Court issued a preliminary order that required conversion of the District from a dual to a unitary system in accordance with the requirements set forth in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), but reserved ruling on student assignment. The Court

adopted the District's student assignment plan on August 29, 1970, and issued a subsequent opinion and order on August 4, 1971 (the "August 1971 Order"), directing the District to make certain modifications to the plan.

On January 13, 1975, the Court entered an order (the "January 1975 Order") that dissolved the August 1971 Order and permanently enjoined the District from "operating a dual system of racially identifiable schools." January 1975 Order at 1. The Court also ordered the District to continue to: (1) take no action to segregate students or faculty between or within schools on the basis of race, color, or national origin; (2) ensure that staff and administrators are "hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated" without regard to race, color, or national origin; (3) ensure bus transportation is provided on a non-discriminatory basis; (4) ensure that all school construction, consolidation, and site selection are done to prevent the recurrence of a dual system; and (5) ensure that all inter-district transfers are permitted on a non-discriminatory basis, except that they will not be permitted "where the cumulative effect will reduce desegregation" in Hendry or the other school district. *Id.* at 2-3. The Court retained jurisdiction to enforce the permanent injunction.

The District successfully desegregated its schools. During the 1969-70 school year, the District operated five schools and enrolled approximately 3,094 students (64.3% white, 25.3% black, and 10.4% other). One of the five schools, Harlem Academy, was a *de jure* black school. For the 2015-16 school year, the District enrolled 7,127 students in twelve schools, including two youth development academies. The District's overall enrollment is 15% black (1,042 students), 20% white (1,452 students), and 65% other (4,633 students). The following chart summarizes the enrollment at each school in the LaBelle and Clewiston communities during the 2015-16 school year:

2

| School | Grades | Black | White | Other | Total |
|---|---|---|---|---|---|
| Westside ES | PK-5 | 127 (21%) | 98 (17%) | 366 (62%) | 591 |
| Eastside ES | PK-5 | 166 (29%) | 73 (13%) | 338 (58%) | 577 |
| Central ES | PK-5 | 134 (22%) | 114 (19%) | 357 (59%) | 605 |
| Clewiston MS | 6-8 | 177 (25%) | 122 (17%) | 414 (58%) | 713 |
| Clewiston HS | 9-12 | 218 (25%) | 195 (22%) | 470 (53%) | 883 |
| Clewiston YDA | 6-12 | 18 (62%) | 4 (14%) | 7 (24%) | 29 |
| Clewiston Totals | | 840 (25%) | 606 (18%) | 1,952 (57%) | 3,398 |

| School | Grades | Black | White | Other | Total |
|---|---|---|---|---|---|
| LaBelle ES | PK-5 | 21 (4%) | 95 (16%) | 475 (80%) | 591 |
| Country Oaks ES | PK-5 | 64 (8%) | 143 (18%) | 600 (74%) | 807 |
| Upthegrove ES | PK-5 | 19 (4%) | 135 (28%) | 324 (68%) | 478 |
| LaBelle MS | 6-8 | 41 (5%) | 171 (23%) | 542 (72%) | 754 |
| LaBelle HS | 9-12 | 53 (5%) | 289 (28%) | 707 (67%) | 1,049 |
| LaBelle YDA | 6-12 | 3 (12%) | 5 (19%) | 18 (69%) | 26 |
| LaBelle Totals | | 275 (7%) | 764 (21%) | 2,666 (72%) | 3,705 |
| "ESE/Hospital Homebound" | PK-12 | 1 (4%) | 8 (33%) | 15 (63%) | 24 |
| TOTAL | | 1,042 (15%) | 1,452 (20%) | 4,633 (65%) | 7,127 |

Although the District has experienced significant growth and changing demographics since the inception of the case, the District has maintained a desegregated student enrollment that reflects the overall racial composition of the District. Specifically, during the 2015-16 school year, all elementary, middle, and high schools fell within +/- 15% of the Districtwide average based on the percentage of black and white students enrolled in Clewiston and LaBelle schools.

There is no evidence of discrimination as it pertains to student assignment between schools, transportation, facilities, or extracurricular activities. For example, the District has granted and denied student transfers in compliance with the District's transfer policy without discriminating on the basis of race. These transfers do not have a negative effect on desegregation in the District's schools. The District also maintains non-discriminatory policies and practices with respect to

3

transportation and provides transportation to students in a non-segregative and non-discriminatory manner. Further, the District has not constructed or consolidated schools in a manner that would interfere with its desegregation obligations and does not have any new consolidation or construction plans in the near future. Finally, the District offers a wide variety of student extracurricular activities to all students without regard to race.

With respect to faculty and staff, the District assigns faculty and staff to schools throughout the District in an equitable manner. However, the District has experienced challenges with minority recruiting and hiring over the last several years. Most recently, in the 2015-16 school year, black faculty constituted only 6% of the District's total faculty personnel and there were no black Principals. The Parties agree that more progress can be made in the area of minority recruitment.

With respect to within school segregation related to student discipline, the District's 2014-15 school year data revealed notable disparities at several schools suggesting that black students are being punished with suspensions at considerably higher rates than white students. Moreover, black students are disproportionately represented at Clewiston Youth Development Academy. The Parties agree that more progress can be made in this area.

## II. Legal Standards

To obtain a declaration of unitary status, the District must show that its schools have: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.

4

*See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 435 (1968); *see Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty..*, 244 F.3d 927, 942 (11th Cir. 2001) (stating that "for a district court to determine whether the vestiges of discrimination have been eliminated to the extent practicable, it must examine . . . the *Green* factors"). The Supreme Court also has approved consideration of other indicia, such as "quality of education," as important factors for determining whether the District has fulfilled its desegregation obligations. *Freeman*, 503 U.S. at 492-93.

A district court may allow partial or incremental dismissal of the desegregation case before full compliance has been achieved in every area of school operations, thereby retaining jurisdiction over those areas not yet in full compliance and terminating jurisdiction over those areas in which compliance is found. *Freeman*, 503 U.S. at 490-91.

**III.    Legal Analysis**

Based on the information and data provided by the District to the United States and the information in the Parties' Joint Motion, the Court finds that the District has complied with the permanent injunction for a reasonable period of time and has eliminated the vestiges of past *de jure* discrimination to the extent practicable with respect to student assignment between schools, transportation, facilities, and extracurricular activities. The Court concludes, therefore, that the District has attained partial unitary status in the areas of student assignment between schools,

5

transportation, facilities, and extracurricular activities, and is entitled to dissolution of the permanent injunction and dismissal of this action in these areas. The Court agrees with the Parties that additional progress can be made in the areas of faculty and staff recruiting and within school segregation relating to student discipline. Therefore, the Court approves the Parties' Stipulation regarding Faculty and Staff Recruiting and Student Discipline and will retain jurisdiction pursuant to the terms of the Stipulation. *See* Ex. 1.

Accordingly, it is hereby **ORDERED** that:

1) The Joint Motion is **GRANTED**;

2) The District is declared partially unitary with respect to student assignment between schools, transportation, facilities, and extracurricular activities;

3) All prior injunctions in this case are **DISSOLVED** and jurisdiction is **TERMINATED** with respect to student assignment between schools, transportation, facilities, and extracurricular activities;

4) The Stipulation regarding Faculty and Staff Recruiting and Student Discipline is **APPROVED**, and the Court will retain jurisdiction as it pertains to faculty and staff recruiting and student discipline per the terms of the Stipulation.

ENTERED THIS 20 DAY OF January 2017.

_____
United States District Judge

c: All counsel of record