UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )   Case No. 70-1069
                                         )
BOARD OF EDUCATION OF HENDRY             )
COUNTY,                                  )
                    Defendant.           )
                                         )
                                         )

## ORDER

This Cause is before the Court upon the Joint Motion for Declaration of Partial Unitary Status Regarding Faculty and Staff and for Approval of Revised Stipulation Regarding Student Discipline (the "Joint Motion") submitted by the United States and the Board of Education of Hendry County (the "District") (collectively, the "Parties"). For the reasons stated below, the Court grants the Joint Motion and approves the Parties' Stipulation Regarding Student Discipline.

I.    **Procedural History and Stipulated Facts**

The United States filed this lawsuit against the District on July 8, 1970, alleging that the District continued to operate a dual school system based on race. On July 31, 1970, the Court issued a preliminary order that required the District's conversion from a dual system to a unitary system in accordance with the requirements set forth in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), but reserved ruling on student assignment. The Court adopted the District's student assignment plan on August 29, 1970, and issued a subsequent opinion and order on August 4, 1971 (the "August 1971 Order"), directing the District to make certain modifications to the plan.

On January 13, 1975, the Court entered an order (the "January 1975 Order") that dissolved the August 1971 Order and permanently enjoined the District from "operating a dual system of racially identifiable schools." [January 1975 Order at 1.] The Court also ordered the District to continue to: (1) take no action to segregate students or faculty between or within schools on the basis of race, color, or national origin; (2) ensure that staff and administrators are "hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated" without regard to race, color, or national origin; (3) ensure bus transportation is provided on a non-discriminatory basis; (4) ensure that all school construction, consolidation, and site selection are done to prevent the recurrence of a dual system; and (5) ensure that all inter-district transfers are permitted on a non-discriminatory basis, except that they will not be permitted "where the cumulative effect will reduce desegregation" in Hendry or the other school district. [*Id.* at 2-3.] The Court retained jurisdiction to enforce the permanent injunction.

On January 12, 2017, the Court granted the Parties' joint motion seeking declaration of partial unitary status and entered an order directing the District to comply with the Parties' stipulation regarding faculty and staff recruiting and student discipline. [*See* Doc. 119 ("January 2017 Order"); *see also* Doc 119-1 ("January 2017 Stipulation").] The January 2017 Order states that the District "eliminated the vestiges of past *de jure* discrimination to the extent practicable" with respect to student assignment between schools, transportation, facilities, and extracurricular activities. [*Id.* at 5.] The Court retained jurisdiction over the remaining areas and approved the Parties' January 2017 Stipulation, noting that "additional progress [could] be made in the areas of faculty and staff recruiting and within school segregation relating to student discipline." [Doc. 119 at 6; *see* Doc 119-1.]

The Parties agree that the District's record of implementing the terms of the January 2017 Stipulation supports a declaration of partial unitary status in the areas of faculty and staff recruiting. Consistent with its obligations under the January 2017 Stipulation, the District has taken concrete steps to increase its recruitment of minority faculty and staff. The Parties also agree that there is no evidence of racial discrimination in the District's recruitment and hiring practices. The District reports that no employees have filed complaints of racial discrimination in the recruitment and hiring process since the January 2017 Stipulation took effect, and that its record supports the conclusion that it hires new faculty and staff in a non-discriminatory manner. Over the last six school years, the District has increased the total number and percentage of its minority employees. From the 2015-16 school year to the 2020-21 school year, the total number of black full-time faculty and staff steadily increased from 89 to 118 employees (10.7% to 12.7% of all such employees), and the number of "other" (predominantly Hispanic) faculty and staff rose even more sharply from 156 to 269 employees (18.8% to 28.9 % of all such employees).

As an ongoing demonstration of good faith, the District plans to continue implementing many of the Districtwide measures in the January 2017 Stipulation to recruit diverse applicant pools even following the dismissal of the faculty and staff recruiting area from this case. The District has indicated that it will continue its broad outreach and recruitment efforts, including but not limited to its "homegrown" tuition reimbursement program, outreach at colleges and universities with diverse populations, and use of committees designed to recruit and hire a diverse workforce. The District also will ensure that its District- and school-based systems for maintaining applicant and hiring data are complete, accurate, and consistent. In each of these ways, the District intends to continue monitoring its faculty and staff hiring practices to ensure that they are non-discriminatory.

With respect to student discipline, the Parties acknowledge that the District has made some progress in this area but agree that the District can take further steps to fully meet its desegregation obligations. A disproportionate number of black students at several schools continue to receive exclusionary disciplinary consequences compared to their white peers. Moreover, the United States' review of the District's discipline data revealed several instances in which similarly situated students in the District received racially disparate disciplinary treatment. The Parties acknowledge that it would be helpful to have at least one additional school year to evaluate the District's compliance with the January 2017 Stipulation in the area of student discipline due to the impact of the COVID-19 pandemic on the District's operations during the 2020-21 school year and the latter half of the 2019-20 school year.

## II.     Legal Standards

To obtain a declaration of unitary status, the District must show that its schools have: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 435 (1968); *see Manning ex rel. Manning v.*

*Sch. Bd. of Hillsborough Cty.*, 244 F.3d 927, 942 (11th Cir. 2001) (stating that "for a district court to determine whether the vestiges of discrimination have been eliminated to the extent practicable, it must examine . . . the *Green* factors"). The Supreme Court also has approved consideration of other indicia, such as "quality of education," as important factors for determining whether the District has fulfilled its desegregation obligations. *Freeman*, 503 U.S. at 492-93.

A district court may allow partial or incremental dismissal of the desegregation case before full compliance has been achieved in every area of school operations, thereby retaining jurisdiction over those areas not yet in full compliance and terminating jurisdiction over those areas in which compliance is found. *Freeman*, 503 U.S. at 490-91. In addition, the January 2017 Stipulation states that, "[a]bsent evidence of racial discrimination in the District's faculty and staff recruitment or student discipline practices," the District's full and good faith compliance with the terms of the January 2017 Stipulation should "support a finding that the District has attained unitary status in the areas of faculty, staff, and within school segregation related to student discipline." [Doc. 119-1 at 7.]

### III.  Legal Analysis

Based on the information and data provided in the Parties' Joint Motion, the Court finds that the District has complied with the Court's orders for a reasonable period of time and has eliminated the vestiges of past *de jure* discrimination to the extent practicable with respect to faculty and staff recruitment. The Court concludes, therefore, that the District has attained partial unitary status in the area of faculty and staff recruitment and is entitled to dissolution of its faculty and staff obligations and dismissal of this area from this action. The Court agrees with the Parties that additional progress can be made in the area of within school segregation relating to student discipline. Therefore, the Court approves the Parties' Stipulation Regarding Student Discipline

and will retain jurisdiction pursuant to the terms of the Stipulation Regarding Student Discipline. *See* Ex. 1.

Accordingly, it is hereby **ORDERED** that:

1)      The Joint Motion is **GRANTED**;

2)      The District is declared partially unitary with respect to faculty and staff recruiting;

3)      All prior injunctions in this case are **DISSOLVED** and jurisdiction is **TERMINATED** with respect to faculty and staff recruiting;

4)      The Stipulation Regarding Student Discipline is **APPROVED**, and the Court will retain jurisdiction as it pertains to student discipline per the terms of the Stipulation Regarding Student Discipline.

ENTERED THIS 25th DAY OF October 2021.

_____
United States District Judge

c: All counsel of record